IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**TERRY REX**                                    **NO. 1:10-CV-2371**

**v.**                                            **JUDGE CONNER**

**TIMBAR PACKING AND DISPLAY**       **MAGISTRATE JUDGE METHVIN**

**v.**

**DIANA T. CLARKE, DPM and
KEYSTONE PODIATRIC MEDCIAL
ASSOCIATES**

REPORT AND RECOMMENDATION
ON MOTION FOR SUMMARY JUDGMENT
(Doc. 18)

Terry Rex initiated this employment discrimination action on September 8,
2010, by filing a writ of summons in the Court of Common Pleas of Adams
County against Timbar Packing and Display. Timbar removed the action to this
court on November 16, 2010. (Doc. 1). An amended complaint, filed on
February 18, 2011, alleged claims under The Consolidated Omnibus Budget
Reconciliation Act of 1985, 29 U.S.C. § 1161, *et seq*. ("COBRA"); the Americans
with Disabilities Act, 42 U.S.C. § 12101, *et seq*., ("ADA"); the Pennsylvania
Human Relations Act, ("PHRA") (Doc. 7); and a state law claim for intentional
infliction of emotional distress. Rex has withdrawn the COBRA claim and the

2

state law claim, leaving only the claims under the ADA and PHRA, which are

essentially identical.[1]

Before the court is Timbar's motion for summary judgment.[2] The motion

has been referred to the undersigned for a report and recommendation, and is now

ripe for disposition.[3]

## FINDINGS AND RECOMMENDATIONS

## I. Background

Viewing the facts in a light most favorable to Rex as the non-movant

reveals the following factual background: Rex was previously employed by

Timbar as a floating facilitator. (Docs. 20, 26 ¶ 1). On April 12, 2009, Rex

requested FMLA leave for an infected toe, which prevented him from standing, as

---

[1] *See* Doc. 23, at 6, n.1, for Rex's statement withdrawing the COBRA claim and claim for intentional infliction of emotional distress.

[2] Third party defendants Clarke and Keystone Podiatric Medical Associates are not parties to the present motion. Rather, they filed their own motion for summary judgment and accompanying documents on July, 18, 2011 (Docs. 15, 16, 17). The court granted the motion on August 9, 2011, but deferred the entry of judgment until the resolution of all claims in the matter. (Doc. 31).

[3] Timbar filed a motion for summary judgment, appendix, statement of material facts and supporting brief on July 18, 2011. (Docs. 18, 19, 20, 21). Rex filed a brief in opposition as well as an affidavit, statement of material facts on August 2 , 2011. (Docs. 23, 24, 26). Movant filed a reply brief in affidavit on August 19, 2011. (Docs. 32, 33). Rex filed a supplemental brief, incorrectly docketed as am amended complaint, on the issue of judicial estoppel on January 17, 2012 (Doc. 37), to which movant filed a responsive brief on January 30, 2012. (Doc. 38).

3

well as a work-related injury to his left knee. (*Id*. at ¶ 2). After 12 weeks of FMLA leave, Rex's accrued vacation time was applied to his leave of absence from June 20, 2009 through July 13, 2009. (*Id*. at ¶¶ 3, 4). Upon the exhaustion of his paid leave, Timbar extended Rex's leave of absence from July 13, 2009 to August 21, 2009. (*Id*. at ¶ 5).

Rex attempted to return to work in September, 2009, but was unable to do so and Timbar therefore allowed him additional leave from September 5, 2009 through September 16, 2009. Rex thereafter had surgery for revascularization of his left foot on September 9, 2009. (Doc. 7, ¶ 23; Doc. 28, p. 4:16–19). The next day, September 10, 2009, Rex had another surgery to perform a resection of the left metatarsal head (Doc. 28, p. 4:20–23). Later that same month,[4] Timbar's human resources director, Sherry Taylor, spoke with Rex. (Doc. 19, p. 17–18; Doc. 20, ¶ 7; Doc. 28, p. 18). Taylor asked Rex how the surgery had gone, and also asked if Rex knew when he would be able to return to work. (Doc. 19, p. 17: 8–17). Rex responded that he would need to convalesce from the surgery, and would thereafter require physical therapy. (*Id.*). Rex was unsure of when he could return to work. (*Id*. at 17:16–19).

---

[4] The parties disagree on the date of the conversation between Rex and Taylor. Timbar maintains the conversation occurred on September 16, 2009, and Rex avers it was September 18, 2009. (Doc. 19, p. 56; Doc. 20, ¶ 7).

4

Timbar terminated Rex on September 16, 2009. (Docs. 20, 26 ¶ 11). Since his dismissal, Rex has not returned to work and remains unable to work. (*Id*. at ¶ 13).

At the time of his termination, Rex was unaware that his condition would require further surgery. (*Id*. at ¶ 16). Rex's health insurance coverage terminated as of September 16, 2009, the date of his dismissal. (*Id*. at ¶ 14). Rex had received a copy of Timbar's group medical plan. (*Id*. at ¶ 15). Rex testified that he learned from Taylor about continuing his health care coverage through COBRA,[5] and that coverage under COBRA would be retroactive to the date of his termination. (*Id*. at ¶ 17; Doc. 19, p. 20). Rex's COBRA notice contains the processing date of September 22, 2009. (Doc. 19, p. 46–52). Rex returned his COBRA notice on October 2, 2009. (Docs. 20, 26 ¶ 22).

Given his recurrent and persistent foot problems, including foot infections and gangrene, amputation of the fifth toe of the left foot was scheduled. (Doc. 19, Ex. E, p. 62–65). As noted above, at the time he spoke to Taylor, however, Rex was unaware, and therefore did not inform her, that another surgery of his foot would be required. (Doc. 19, Ex. A., p. 20:15–21:9 (deposition p. 90:15–91:9)).

---

[5] COBRA gives workers who lose health care benefits the right to continue to carry group health insurance coverage under their group health plan for limited periods of time.

5

On September 22, 2009, Rex's physician, Dr. Diana T. Clarke, informed him that his surgery would be cancelled because he no longer had health insurance. (Docs. 20, 26 ¶ 20). However, Dr. Clarke thereafter performed the surgery on September 29, 2009. (*Id*. at ¶ 21).

An ulcerous sore Rex developed in 2008 became infected, and Rex was again scheduled for surgery in October, 2009. (*Id*. at ¶ 25; Doc. 19, Ex. F, p. 67–70). Due to his poor circulation, Rex's physician recommended a partial foot amputation to improve circulation to the foot for proper healing. (Docs. 20, 26 ¶¶ 27, 28). Rex agreed to the surgery, which was performed on October 12, 2009. (*Id*. at ¶ 28).

## II. Issues Presented

Movant contends it is entitled to summary judgment on the following grounds:

A.  Rex is unable to establish that he is a qualified individual under the ADA.

B.  Rex cannot prove that movant failed to accommodate his disability.

C.  Rex is judicially estopped from asserting he is a qualified individual under the ADA because he has previously asserted that he is totally disabled.

6

## III. Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure states that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a).[6] A fact is material if its determination might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A dispute is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.*

Initially, the moving party bears the burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325.

If the moving party carries this initial burden, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial" and do more than "simply show that there is some metaphysical doubt as to the

---

[6] The language of Rule 56 was revised by amendment effective December 1, 2010. However, "[t]he standard for granting summary judgment remains unchanged," and "[t]he amendments will not affect continuing development of the decisional law construing and applying these phrases." Fed.R.Civ.P. 56 advisory committee's note to 2010 Amendments.

material facts." *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011) (citing

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)

(internal quotation marks omitted)). The nonmoving party cannot rely upon

unsupported allegations in the pleadings. *Celotex Corp. v. Catrett*, 477 U.S. 317,

322–23 (1986). Further, arguments made in briefs "are not evidence and cannot by

themselves create a factual dispute sufficient to defeat a summary judgment

motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103,

1109–10 (3d Cir. 1985).

The Court must view the facts in a light most favorable to the non-moving

party, and the "existence of disputed issues of material fact should be ascertained

by resolving 'all inferences, doubts and issues of credibility against the moving

party.'" *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir. 1978) (quoting

*Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir. 1972)). *See

also Anderson*, 477 U.S. at 242. Final credibility determinations on material issues

cannot be made in the context of a motion for summary judgment, nor can the

court weigh the evidence. *Josey v. Hollingsworth Corp.*, 996 F.2d 632 (3d Cir.

1993); *Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co.*, 998 F.2d

1224 (3d Cir. 1993).

8

At summary judgment, the inquiry is whether the evidence presents a

sufficient disagreement to require submission to the jury or whether it is so

one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at

251–52. In making this determination, the Court must "consider all evidence in the

light most favorable to the party opposing the motion." *A.W. v. Jersey City Pub.*

*Schs.*, 486 F.3d 791, 794 (3d Cir. 2007).

## IV. Discussion

### A. Disability Discrimination/Failure to Accommodate[7]

Congress enacted the ADA in 1990 in an effort to prevent otherwise

qualified individuals from being discriminated against in employment based on

disability. *See* 29 C.F.R. § 1630. The ADA provides that "[n]o covered entity shall

discriminate against a qualified individual with a disability because of the

disability of such individual in regard to job application procedures, the hiring,

advancement, or discharge of employees, employee compensation, job training,

and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

---

[7] The analytical framework used to evaluate a disability discrimination claim under the PHRA is effectively indistinguishable from that under the ADA, thus allowing courts to dispose of both ADA and PHRA claims on the same grounds. *Bialko v. Quaker Oats Co.*, 434 F. App'x. 139, 142 n.5 (3d Cir. 2011).

9

The Act defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that individual holds or desires." *Id* at § 12111(8). An employer discriminates against a qualified individual when it does "not mak[e] reasonable accommodations to the known physical or mental limitations of the individual unless the [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer]." *Id.* at § 12112(b)(5)(A). "Reasonable accommodation" means measures such as "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, ... and other similar accommodations for individuals with disabilities." *Id.* at § 12111(9).

To establish a prima facie case of discrimination under the ADA, a plaintiff must present evidence that: (1) he has a "disability" within the meaning of the ADA; (2) he was qualified for the position, with or without accommodation; and (3) he suffered an adverse employment decision as a result of the discrimination. *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir.2000); *Deane v. Pocono Medical Center*, 142 F.3d 138, 142 (3d Cir.1998) (*en banc*).

10

The first and third factors do not appear to be contested. Rather the parties disagree only on whether there is evidence to demonstrate the second factor—that Rex is a "qualified individual" under the ADA, meaning that he can perform the essential functions of his position of floating facilitator, with or without a reasonable accommodation.

This inquiry is divided into two parts: (1) whether the individual has the requisite skill, experience, education and other job-related requirements of the position sought, and (2) whether the individual, with or without reasonable accommodation, can perform the essential functions of that position. 29 C.F.R. § 1630.2(n); *Buskirk v. Apollo Metals*, 307 F.3d 160, 168 (3d Cir.2002). The determination of whether an individual with a disability is qualified is made at the time of the employment decision, and not at the time of the lawsuit. *Gaul v. Lucent Techs. Inc.,* 134 F.3d 576, 580 (3d Cir.1998).

The parties do not dispute that Rex satisfies the first part of the inquiry in that he has the qualifications to perform the position he previously held. Additionally, both parties appear to concede that Rex could not return to his former position as a floating facilitator, and perform the essential functions of that position, without an accommodation. The question presented, then, is whether he can perform the essential functions of his job with reasonable accommodation. If

he cannot, he is not a qualified person under the ADA. *Shafnisky v. Bell Atlantic, Inc.*, No. Civ. A. 01-3044, 2002 WL 31513551, *4 (E.D. Pa. Nov. 5, 2002) ("A person who is totally disabled and thus unable to perform in a job, even with accommodation, is not a "qualified individual" under the ADA.); *see Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1108–09 (9th Cir. 2001); *Ross v. Ind. State Teacher's Ass'n Ins. Trust*, 159 F.3d 1001, 1016 (7th Cir. 1999); *Fennell v. Aetna Life Ins. Co.*, 37 F. Supp.2d 40, 43-44 (D.D.C. 1999); *Esfahani v. Medical College of Pennsylvania*, 919 F. Supp. 832, 835 (E.D. Pa.1996).

Rex has proposed that a continued leave of absence, up to one year, was a reasonable accommodation.[8] Thus, the central issue to be resolved is whether a leave of absence is a reasonable accommodation under these facts and circumstances.

"Under the ADA, once an individual is unable to perform the essential functions of the position . . . the inquiry shifts to whether reasonable accommodations can be made which would allow the individual to perform those essential functions." *Freeman v. Rollins Envtl. Servs. of New Jersey*, No. Civ. A. 94-1871, 1996 WL 451317, at *6 (D.N.J. Aug. 5, 1996) (citing *Milton v. Scrivner*,

[8] Timbar had in place a policy permitting employees suffering work-related injuries up to one year of unpaid leave.

12

53 F.3d 1118, 1123 (10th Cir. 1995)). An employer discriminates against a

qualified individual when the employer does "not make reasonable

accommodations to the known physical or mental limitations of the individual

unless the employer can demonstrate that the accommodation would impose an

undue hardship on the operation of the business of the employer." *Taylor v.*

*Phoenixville School District*, 184 F.3d 296, 306 (3d Cir.1999) (citing 42 U.S.C. §

12112(b)(5)(A)).

Reasonable accommodations include "measures such as 'job restructuring,

part-time or modified work schedules ... acquisition or modification of equipment

or devices ... and other similar accommodations for individuals with disabilities.'"

*Freeman v. Chertoff*, 604 F. Supp.2d 726, 734 (D.N.J.2009) (citing 42 U.S.C. §

12111(9)(B)). When making an accommodation claim, "[a]n employee can

succeed . . . only if the employee can demonstrate that a specific, reasonable

accommodation would have allowed her to perform the essential functions of her

job." *Donahue v. Consol. Rail Corp.*, 224 F.3d 226, 232 (3d Cir.2000) (internal

citations and quotations omitted). If the plaintiff makes this showing, the burden

shifts to the defendant to prove that the requested accommodations "are

unreasonable, or would cause an undue hardship on the employer." *Turner v.*

*Hershey Chocolate U.S.A.*, 440 F.3d 604, 614 (3d Cir.2006). Generally, the

13

question of whether a proposed accommodation is reasonable is a question of fact.

*See Buskirk v. Apollo Metals*, 307 F.3d 160, 170-71 (3d Cir.2002) (citing *Hovsons,*

*Inc. v. Township of Brick*, 89 F.3d 1096, 1101 (3d Cir.1996)).

Additionally, "[a]n employee can demonstrate that an employer breached its

duty to provide reasonable accommodations because it failed to engage in good

faith in the interactive process by showing that: (1) the employer knew about the

employee's disability; (2) the employee requested accommodations or assistance

for his or her disability; (3) the employer did not make a good faith effort to assist

the employee in seeking accommodations; and (4) the employee could have been

reasonably accommodated but for the employer's lack of good faith." *Colwell v.*

*Rite Aid Corp.*, 602 F.3d 495, 504 (3d Cir. 2010) (citing *Williams*, 380 F.3d at 761

(additional citations omitted). However:

> [W]hile "an employer who fails to engage in the interactive process
> runs a serious risk that it will erroneously overlook an opportunity to
> accommodate a statutorily disabled employee, and thereby violate the
> ADA," *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 149 (3d Cir.1998)
> (en banc), failure to engage in the interactive process, in itself, does
> not constitute such a violation. *See Shapiro v. Twp. of Lakewood*, 292
> F.3d 356, 359 (3d Cir.2002); *Mengine*, 114 F.3d at 420-21; *see also*
> *Pathmark Stores*, 177 F.3d at 193 (noting that "an employer [who acts
> on the belief that a perceived disability inherently precludes
> performance of the essential functions of a job, with or without
> accommodation] is failing to make an individualized determination,
> as the ADA requires, and thus acts at its peril," as "the employer must

14

be correct about the affected employee's ability to perform the job in order to avoid liability").

*Hohider v. United Parcel Service, Inc.*, 574 F.3d 169, 194 (3d. Cir. 2009).

The Third Circuit Court of Appeals has adopted a "middle course" on the burdens of production and persuasion on the issues of reasonable accommodation and undue hardship. *Bisker v. GGS Information Services, Inc.*, No. 1:07-CV-1465, 2010 WL 2265979, *2 (M.D. Pa. June 2, 2010). First, the plaintiff bears the initial burden of proving that "she is otherwise qualified; if an accommodation is needed, the plaintiff must show, as part of her burden of persuasion, that an effective accommodation exists that would render her otherwise qualified." *Id.* (quoting *Walton v. Mental Health Ass'n of Southeastern Pennsylvania*, 168 F.3d 661, 670 (3d Cir.1999)). With respect to a reasonable accommodation, the plaintiff is required only to "identify[] an accommodation, the costs of which, facially, do not clearly exceeds its benefits." *Id.* (quoting *Walton, supra*). Once the plaintiff has met this requirement, the burden shifts to the defendant "to prove either that the accommodation is unreasonable or that it creates an undue hardship for the defendant." *Id.* (quoting *Walton, supra*).

In the present matter, Timbar contends that Rex is not a qualified individual under the ADA because there exists no reasonable accommodation which would

15

allow his to perform the essential functions of the floating facilitator position. It argues that Rex is unable to establish that Timbar failed to accommodate him not only because he failed to request any accommodation but also that his now-proposed accommodation, an open-ended leave of absence, is not a reasonable accommodation under the circumstances.

In certain circumstances, a leave of absence for medical treatment may constitute a "reasonable accommodation" under the ADA. *Bernhard v. Brown & Brown of Lehigh Valley, Inc.*, 720 F. Supp.2d 694 (E.D. Pa.2010); *Dogmanits v. Capital Blue Cross*, 413 F. Supp.2d 452 (E.D. Pa. 2005) (While leaves of absence for medical treatment can be considered as a reasonable accommodation for disability in some circumstances, leave time must enable employee to perform his or her essential job functions in the near future). However, a continued leave of absence for an unspecified length of time is not a reasonable accommodation. *Reifer v. Colonial Intermediate Unit 20*, 462 F. Supp.2d 621, 636 (M.D. Pa. 2006); *see also Brannon v. Luco Mop Co.*, 521 F.3d 843 (8th Cir. 2008) (an employer is not required by the ADA to provide an unlimited absentee policy)*; Dansler-Hill v. Rochester Institute of Technology,* 764 F. Supp.2d 577 (W.D. N.Y. 2011) (Although temporally-defined leave of absence may constitute a "reasonable accommodation" under the ADA, employer is not required to place an employee

on indefinite leave, awaiting the day when the employee might recover sufficiently from his disability to return to work); *Brown v. The Pension Boards*, 488 F. Supp.2d 395 (S.D.N.Y.2007) (employee's request for open-ended, indefinite leave of absence, with no guarantee that it will actually enable employee to eventually return to work to perform his essential job functions, goes beyond ADA's accommodation requirements). The weight of authority in the Third Circuit, as well as other Circuits, clearly establishes that a leave of absence for an indefinite duration is not a reasonable accommodation. *Dogmanits v. Capital Blue Cross,* 413 F. Supp.2d 452, 461 (E.D. Pa. 2005)*; see e.g., Fogleman v. Greater Hazleton Health Alliance*, 122 F. App' x. 581, 585 (3d Cir.2004) (holding that an indefinite or open-ended leave "does not constitute a reasonable accommodation"); *Peter v. Lincoln Technical Inst.*, 255 F. Supp.2d 417, 437 (E.D. Pa.2002) (citing to Fourth, Fifth, Sixth, and Tenth Circuits in concluding that "an indefinite leave is inherently unreasonable").

Rex testified that he spoke with Sherry Taylor, the human resources director, prior to being terminated. (Doc. 19, Ex. A., p. 17–18 (deposition p. 86–87)). He stated that he told Taylor he needed a convalescence period and then would require physical therapy. (*Id*. at 17:25–18:3 (deposition p. 87:25–88:3)). Rex acknowledged that he told Taylor he did not know when he would be able to

17

return to work. (*Id*; 18:12–16; 22:8–12 (deposition p. 87:25–88:3; 88:12–16; 93:8–12)). Additionally, he did not tell Taylor that he required further surgery, as he was not aware of this fact at the time he spoke with her. (Doc. 19, Ex. A., p. 20:15–21:9 (deposition p. 90:15–91:9)).[9]

There is no evidence that Rex requested a further leave of absence, or any other proposed accommodation, from Timbar. Moreover, Timbar contends that even if reasonable, a leave of absence would not have enabled Rex to perform the essential functions of his job in the near future from the time of his termination. According to Rex's own estimates, at the time of his discharge, he needed to convalesce from his surgery for 4–6 weeks, and thereafter would require physical therapy before a return to work could be contemplated. Coupled with the fact that Timbar had already extended Rex's leave of absence approximately ten weeks, Rex is unable to show that further, indefinite extension of his leave of absence would have been a reasonable accommodation in these circumstances.

---

[9] Statements offered by a party in an affidavit, which are contrary to his deposition testimony, need not be considered. *See Jiminez v. All American Rathskeller, Inc.*, 503 F. 3d 247, 254 (3d Cir. 2007) ("When a party does not explain the contradiction between a subsequent affidavit and a prior deposition, it is appropriate for the district court to disregard the subsequent affidavit and the alleged factual issue in dispute as a "sham," therefore not creating an impediment to a grant of summary judgment based on the deposition.") (citing *Hackman v. Valley Fair*, 932 F.2d 239, 241 (3d Cir.1991)).

18

Furthermore, the record shows that Rex still was not able to perform his job duties after the requested accommodation—a one year leave of absence—expired.

Having failed to demonstrate that he was capable of performing the essential functions of his job with or without an accommodation, because no reasonable accommodation exists or has been identified, Rex has failed to establish that he is a qualified individual under the ADA. Accordingly, Rex has failed to meet his initial burden to establish a prima facie case. Summary judgment in favor of Timbar is, therefore, recommended on Counts III (ADA) and IV (PHRA).

B.  *Judicial Estoppel*

Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, is a "judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding." *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir.1996). The doctrine recognizes the "intrinsic ability of courts to dismiss an offending litigant's complaint without considering the merits of the underlying claims when such dismissal is necessary to prevent a litigant from playing fast and loose with the courts." *Krystal*

*Cadillac–Oldsmobile GMC Truck, Inc. v. General Motors*, 337 F.3d 314, 319 (3d Cir.2003).

Judicial estoppel is an "extraordinary remedy" to be invoked in order to stop a "miscarriage of justice"; it is not a "technical defense for litigants seeking to derail potentially meritorious claims." *Ryan Operations*, 81 F.3d at 356. In determining whether the doctrine should apply, court's look at three criteria:

> First, the party to be estopped must have taken two positions that are irreconcilably inconsistent. Second, judicial estoppel is unwarranted unless the party changed his or her position "in bad faith—i.e., with intent to play fast and loose with the court." Finally, a district court may not employ judicial estoppel unless it is "tailored to address the harm identified" and no lesser sanction would adequately remedy the damage done by the litigant's misconduct.

*Krystal Cadillac–Oldsmobile GMC Truck, Inc.*, 337 F.3d at 319. The party to be estopped must have a meaningful opportunity to provide an explanation for its changed position. *Hardee-Guerra v. Shire Pharmaceuticals*, 737 F. Supp.2d 318, 328 (E.D. Pa. 2010) *(citing id.)*

Timbar contends that judicial estoppel precludes Rex from asserting a cause of action under the ADA in which he claim he is able to work, having previously asserted in his claim for long-term disability benefits that he is totally disabled. Rex challenges Timbar's ability to raise the issue of judicial estoppel for the first time on its summary judgment, having failed to raise it as an affirmative defense in

its answer to the amended complaint. Rex further challenges the merits of such a defense in the present action.

Having concluded that Timbar is entitled to summary judgment on Rex's claims, the issue of judicial estoppel need not be reached.  Inasmuch as Rex has failed to establish a prima facie case of either disability discrimination or a failure to accommodate by Timbar, neither the issue of whether judicial estoppel has been waived nor the merits of such a defense are consequential to the present matter and therefore deemed moot.[10]

## V. Recommendation

For the foregoing reasons, it is respectfully recommended that the motion for summary judgment (Doc. 18) be granted.

Signed on March 19, 2012.

_____
MILDRED E. METHVIN
U. S. MAGISTRATE JUDGE

---

[10] Moreover, if the estoppel issue were deemed timely raised and not waived, Rex still has failed to produce an explanation for his conflicting positions.